```
                IN THE UNITED STATES DISTRICT COURT

                   FOR THE DISTRICT OF NEW MEXICO
_____
                        )
UNITED STATES OF AMERICA,)   No. 1:21-CR-01082-WJ
                        )
        Plaintiff,      )
                        )   Pete V. Domenici U.S. Courthouse
    vs.                 )   Albuquerque, New Mexico
                        )
JASMINE WILLIAMS,       )   Wednesday, November 10, 2021
                        )   10:00 A.M. MST
        Defendant.      )
_____)   Zoom Videoconference


                    TRANSCRIPT OF PROCEEDINGS
                       SENTENCING HEARING
              BEFORE THE HONORABLE WILLIAM P. JOHNSON
                CHIEF UNITED STATES DISTRICT JUDGE


APPEARANCES:

For the Plaintiff:    SHANA B. LONG, ESQ.
                      UNITED STATES ATTORNEY'S OFFICE
                      District of New Mexico
                      Post Office Box 607
                      Albuquerque, New Mexico   87103

For the Defendant:    STEPHEN A. TAYLOR, ESQ.
                      FEDERAL PUBLIC DEFENDER
                      District of New Mexico
                      111 Lomas Blvd., NW, Suite 501
                      Albuquerque, New Mexico   87102

For the USPPS:        DANIELLA MARTINEZ

Reported by:          MARY K. LOUGHRAN, CRR, RPR, NM CCR #65
                      United States Court Reporter
                      Phone:  (505)348-2334
                      Email:  Mary_Loughran@nmd.uscourts.gov


     Proceedings reported by machine shorthand and transcript

produced by computer-aided transcription.
```

|   |   |
|---|---|
| 1 | USA v. WILLIAMS - 1:21-CR-01082-WJ |
| 2 | SENTENCING HEARING |
| 3 | * * * * * |

4  (In Open Court at 10:07 A.M. MST)

5          THE COURT:  Let me call United States vs. Jasmine
6  Williams, 21-CR-1082.  Would counsel enter their appearances,
7  please.

8          MS. LONG:  Good morning, Your Honor.  Shana Long for
9  the United States.

10         MR. TAYLOR:  Good morning, Your Honor.  Stephen
11 Taylor for Jasmine Williams.

12         THE COURT:  And Ms. Williams is present with you?

13         MR. TAYLOR:  Yes; I'm sorry.  She's here present with
14 me at my office.

15         THE COURT:  All right.  I'll note for the record that
16 there is a Waiver of Personal Presence form that's been signed,
17 so I will make the finding that Ms. Williams consents to this
18 matter proceeding by way of video conferencing.

19         Mr. Taylor, was the Presentence Report reviewed with
20 Ms. Williams?

21         MR. TAYLOR:  Yes, it was, and we have no objections
22 to anything in the report, Your Honor.

23         THE COURT:  All right.  The United States Supreme
24 Court has held that the starting point for federal sentencing
25 is for the Court to arrive at a correctly calculated guideline

1  sentence.  So I will make the finding that Probation correctly
2  calculated the Defendant's Offense Level to be 29, her Criminal
3  History Category to be 2, and that's an advisory sentencing
4  guideline range of 97 to 121 months.
5          Now, let me inquire of Ms. Long.  There's a plea
6  agreement, and this plea agreement includes a -- it's very,
7  very beneficial to the Defendant.  I'll note she qualifies
8  under the First Step Act for the new safety valve provision,
9  but this case did involve 14.62 net kilograms of actual
10 methamphetamine.  So Ms. Long, what's the United States'
11 rationale for this plea agreement?
12         MS. LONG:  Thank you, Your Honor.  So, the United
13 States would note that with the application of the two levels
14 for the safety valve, that -- I understand that the sentencing
15 guidelines have not yet been amended, so that would have to be
16 accomplished through a downward variance.  Ms. Williams in her
17 plea agreement would not be then further seeking leave from the
18 court for further reduction once the guidelines are properly
19 adjusted, once we have an ability to do that at the Commission.
20 So even though we're starting under the properly calculated
21 guideline range, not taking into account the two levels, those
22 two levels should factor into a downward variance which would
23 form the basis of 78 to 97 months.
24         The agreement that the United States has reached with
25 the Defendant obviously reflects a much lower sentence than

1  that, and this is the justification that I believe supports
2  that, and I urge the Court to accept the plea agreement and
3  sentence her accordingly.
4           The United States Attorney's Office has engaged in
5  kind of a revamping of how we allocate our resources and who we
6  proceed with in terms of a robust federal prosecution, and that
7  is an acknowledgment of how extremely congested the federal
8  court docket is, how much more violent local drug traffickers
9  are with firearms, and really trying to adjust our resources
10 when we are doing full-blown suppression litigation and trials
11 on the most violent drug traffickers that are having an
12 immediate impact on our community.
13          Based on that, the United States has set up a state
14 plea program.  Under that program, certain qualifying
15 individuals are allowed to have the opportunity to go to state
16 court and, under the program, they agree to a term of 18 months
17 imprisonment.  It's a 50% crime in the state, which results in
18 a period of nine months, approximately, of custody.
19          Unfortunately, the plea program was getting off the
20 ground at the same time the pandemic hit, and the state court,
21 much like the federal court and the rest of society, largely
22 came to a halt.  So what ended up happening was, we didn't want
23 to create a disparity between people who were being arrested
24 during COVID and undermine the intent of the program with
25 access to the state plea program.

1           So based on that, on a case-by-case basis, we
2   evaluated if there were cases that we could dispose of
3   federally, yet afford them a similar relief.  So that is how we
4   came up with a 13-month sentence.  At 85%, it would be roughly
5   equivalent to the nine months that other people are serving.
6           And I would note specifically as to this Defendant, I
7   think she has some personal characteristics under 3553(e) that
8   very much support this downward variance.  She's the sole
9   caregiver to a minor child, she lacks any significant criminal
10  history, and she did provide a safety valve debrief that
11  entitles her to safety valve.  But also, in my view, in
12  speaking with the agent, her debrief also further justifies why
13  this consideration is warranted.
14          I would note, Your Honor, that by proceeding
15  federally with this and her receiving the 13-month sentence,
16  she did not bring any suppression litigation, which as Your
17  Honor is very well aware has been very time-consuming for
18  everyone, and really has accepted responsibility with minimal
19  resources expended by any of the parties.
20          Finally, Your Honor, I would note that the 13-month
21  sentence would be 851 eligible should this Defendant reoffend
22  in a federal drug trafficking offense.  That is something that
23  we don't have available to us when we do the state plea
24  program.  So while I do not anticipate that this Defendant
25  would reoffend, should she do so, she would be subject to

1  enhanced penalties pursuant to 851.
2          So Your Honor, for those reasons, we would ask that
3  you accept the plea agreement and sentence her accordingly.
4          THE COURT:  Did the plea agreement include a specific
5  term of supervised release?
6          MS. LONG:  No, Your Honor.
7          THE COURT:  Okay.  Mr. Taylor.
8          MR. TAYLOR:  Yes, Your Honor.  I'd echo what Ms. Long
9  reported to the Court.  It seems like a fair resolution from
10 Ms. Williams' standpoint.  She was given the opportunity to do
11 the state plea program, but Ms. Williams actually is from
12 Columbus, Ohio, and so she would prefer to take the federal
13 plea and possibly be placed in a BOP facility closer to home.
14 That way, she could have closer access to her six-year-old
15 daughter, who is turning seven in February.
16         Ms. Williams has struggled with opioid addiction for
17 several years now, and it, of course, is rooted in childhood
18 trauma that she is seeking treatment for as part of her
19 disposition in this case.  And so she wants to stay as close to
20 home as possible.  She wants to get treatment for her substance
21 abuse and trauma needs.  This is a young lady who in her life
22 has already had three overdoses due to opioid use, and it's
23 become an issue for her that has brought her here before the
24 federal court.  It's something that, you know, she hasn't been
25 able to get control over in her life and something that she

1  wants to get control over, because she wants to be a good
2  mother.  She wants to be there for her daughter.  She wants to
3  be a stable and reliable caregiver.  This is her number one
4  goal.
5          She also has the goal to enroll in cosmetology
6  school.  She was actually enrolled in the program and she was
7  supposed to begin the program in Columbus, Ohio, in May of 2021
8  when she was arrested.  She was arrested in this case and she
9  wasn't able to start that program.  But that's still her goal.
10 She wants to get a certificate so she can cut hair, do nails,
11 and have a stable income, something that due to her drug use
12 and her economic conditions, she's not been able to do in her
13 life.  She's not had stable employment, and that's been an
14 issue for her ever since she was young.  Now she's a parent and
15 she needs to find stable employment for her child, and that way
16 she could become independent and be a good mother.
17         So that's what she wanted the Court to know, is that
18 she wants to get up on her own feet, get her own place, get
19 full custody of her daughter back, and really start making
20 progress in her life, and she knows that the key to do that is
21 treatment.
22         THE COURT:  Ms. Williams, is there anything that you
23 want to state, ma'am?
24         THE DEFENDANT:  No, I think he said that perfectly.
25 I couldn't have said it better myself.  Those are basically

1  just all my goals, once I can put this behind me, to go ahead
2  and make better decisions and, like he said, go to school and
3  make a name for myself in a career that I actually enjoy, and
4  take care of my daughter and set a better example for her.  So
5  everything that he said, I agree with.
6              THE COURT:  In terms of -- I mean, the plea agreement
7  confers a significant benefit for you, because even with the
8  qualification under the First Step Act, the federal sentencing
9  guidelines come down pretty harshly for the quantity of meth
10 that you had on you.  So you're going down further from 78
11 months incarceration to 13.  And when you're in custody for the
12 13 months, have you made arrangements for who is going to be
13 watching over your daughter?
14             THE DEFENDANT:  Yes.  So it's my mother, which thank
15 God for her.  That's who has my daughter now.  She's been
16 raising my daughter, which she would continue to do so.
17             THE COURT:  Is the relationship between you and your
18 mother good?
19             THE DEFENDANT:  Yes.  Especially now I'm sober, it's
20 much better than it has been.
21             THE COURT:  Okay.  You know, hopefully -- first, I
22 don't doubt at all that you love your daughter and you want to
23 be there for her.  Hopefully your daughter and your desire to
24 be a really good mother will help be an additional incentive
25 for you to stay away from the opioids and overcome this

1  addiction, because, again, I don't doubt at all that you love
2  your daughter, but what happens is, if parents are struggling,
3  the needs of the child -- you can't put the child's life on
4  hold while the parents have to, you know, go through drug rehab
5  and stuff.  So it's very important not only for your sake, but
6  for your daughter's sake, that you not fall off the wagon and
7  get back into this opioid addiction.
8           THE DEFENDANT:  Right, I agree.
9           THE COURT:  And the other thing is, it seems like all
10 your -- your only tie to the state of New Mexico is that you
11 were apprehended here with the methamphetamine, right?
12          THE DEFENDANT:  Right.
13          THE COURT:  Well, your lawyer may have told you this,
14 but I have no control over the federal probation there in Ohio.
15 I think your case ought to be, once you're sentenced and as
16 this case moves on, your case needs to be transferred to Ohio,
17 and we can make that request, but it's up to the federal court
18 in Ohio whether to accept your case.  In some parts of the
19 country, they do, and in some parts, they don't.
20          So while you'll be under supervision initially there
21 in Ohio, if the federal court hasn't taken your case and there
22 are violations and a warrant is issued for your arrest, then
23 what will happen is, you'll be transported back to New Mexico.
24 Did Mr. Taylor talk to you about that?
25          THE DEFENDANT:  Yeah, a little bit.  Yeah.

1     THE COURT:  Okay.  So that's an additional incentive
2  for you to stay compliant and not get back into any of the
3  opioid stuff, because you don't want to be brought back to New
4  Mexico in custody and be out here when all your family ties and
5  your responsibilities are in Ohio.
6     THE DEFENDANT:  Right.
7     THE COURT:  I just wanted to make sure you're aware
8  of that.
9     So what I'll do, then, is I'll adopt the Presentence
10 Report's factual findings.  I've considered the sentencing
11 guidelines and the sentencing factors of 18 U.S.C.
12 3553(a)(1)-(7).  The Offense Level is 29, the Criminal History
13 Category is 2.  As I said earlier, that's generally an advisory
14 sentencing guideline range of 97 to 121 months.
15     The Defendant is eligible under the First Step Act
16 for a two-level reduction based on the changes in the law to
17 the safety valve.  Again, because of issues with the Sentencing
18 Commission, what I'll do is, I will go ahead and I will
19 depart -- or rather, I'll find that a variance equivalent of
20 two levels is warranted.  That reduces the guideline sentence
21 to 78 to 97 months.
22     The parties entered into a Rule 11(c)(1)(C) plea
23 agreement.  I'll accept the plea agreement.  It includes a
24 specific sentence of 13 months.  I'll find that the 13-month
25 sentence confers a substantial benefit on the Defendant, in

1   that it significantly reduces her sentencing exposure under the
2   United States Sentencing Guidelines.  I'll also make the
3   finding that the agreed sentence is justified in this case.  I
4   do note that this case involved a situation where the Defendant
5   was in possession, with the intent to distribute, 14.62 net
6   kilograms of actual methamphetamine.
7            As to the information, the Defendant will be
8   committed to the custody of the Bureau of Prisons for a term of
9   13 months, in accordance with the 11(c)(1)(C) plea agreement.
10           There is not an objection to voluntary surrender; is
11  that right, Ms. Long?
12           MS. LONG:  That's correct, Your Honor.
13           THE COURT:  All right.  And then I'm assuming,
14  Ms. Martinez, the Defendant has been compliant with pretrial
15  conditions?
16           OFFICER MARTINEZ:  Yes, that is correct, Your Honor.
17           THE COURT:  All right.  I'll authorize voluntary
18  surrender in this case.  Mr. Taylor, since you-all are in your
19  office -- normally if we were in court over here, she would go
20  down to the Marshals Service and make the arrangements and fill
21  out the paperwork for voluntary surrender.  Have you figured
22  out how to assist her in that regard?
23           MR. TAYLOR:  Yes.  I spoke with the Marshals.  They
24  said that we would need to go over there after court today so
25  she could get processed.

1           THE COURT:  Okay.  And if you would, make sure she
2  does that, because Ms. Williams, once you -- you're going to be
3  allowed voluntary surrender, but you've got to make sure you
4  report when directed.  Otherwise, you could be charged with an
5  additional offense.  So I'll authorize voluntary surrender.
6           Now, I'll also recommend that the Defendant be
7  designated to a BOP facility closest to -- is it Columbus,
8  Ohio?
9           MR. TAYLOR:  That's correct, yes.
10          THE COURT:  And that's what you're requesting?
11          MR. TAYLOR:  Yes, Your Honor, that she be placed as
12 close to home as possible.
13          THE COURT:  All right, I'll make that recommendation.
14 Normally I would also recommend that the Defendant be allowed
15 to participate in the Bureau of Prisons 500-hour drug and
16 alcohol treatment program, but typically a defendant needs 18
17 months on a sentence to qualify for that.  So she's not going
18 to have enough time.
19          I'll recommend that the Bureau of Prisons allow her
20 to participate in any kind of substance abuse treatment program
21 that's available considering the time she has on her sentence.
22          After service of the sentence, the Defendant is
23 placed on supervised release for a term of three years.  She
24 must comply with mandatory and standard conditions.
25          In terms of special conditions, there's the

requirement that the Defendant participate in an outpatient substance abuse treatment program and follow the rules and regulations of the program.  Since the Probation Office must supervise the Defendant's participation in outpatient substance abuse treatment, the Defendant must sign the necessary paperwork to allow the treatment provider to release treatment information to the Probation Office.  The Probation Office may disclose the Presentence Report and any previous substance abuse evaluations or records to the treatment provider.

While under supervised release, the Defendant must submit to substance abuse testing to determine if she's used any prohibited substances.  Testing shall not exceed more than sixty tests per year.  The Defendant cannot obstruct or interfere with any of the testing methods or procedures.

The Defendant must not use or possess alcohol.  The Defendant may be required to submit to alcohol testing.  If alcohol testing is utilized, testing shall not exceed more than four tests per day.  The Defendant cannot attempt to obstruct or tamper with any of the alcohol testing methods or procedures.

The Defendant must not knowingly purchase, possess, distribute, administer, or otherwise use any psychoactive substances, such as synthetic cannabinoids or synthetic cathinones.  These conditions are all imposed based on the nature of the underlying offense and the Defendant's struggles

1  with substance abuse.
2           While under supervised release -- first, I'm not
3  going to impose any kind of fine in this case based on the
4  Defendant's lack of financial resources.  In lieu of a fine,
5  I'm going to impose a requirement that the Defendant complete
6  sixty hours of community service during the three-year term of
7  supervised release.  The Defendant may choose the form of
8  community service, but the Probation Office must approve the
9  form of community service.
10          Additionally, if the Defendant obtains employment or
11 is enrolled in some kind of educational or vocational program,
12 and the time demands placed on her do not allow her to complete
13 the community service, I'll authorize the Probation Office, or
14 give the Probation Office the discretion to waive the community
15 service requirement.
16          I'm also going to impose the requirement of an
17 educational or vocational program that the Defendant be allowed
18 to enroll and participate in.  Since she has a desire to get
19 the cosmetology certifications, then that educational or
20 vocational training program could provide her assistance in
21 that regard.
22          I do have to impose a Special Penalty Assessment of
23 $100, and I'm required to state that it's due immediately.  And
24 then finally, I will find pursuant to the plea agreement, the
25 Defendant waives the right to appeal the final sentence.

1              Is there anything else in this case from the United
2  States?
3              MS. LONG:  Nothing further, Your Honor.
4              THE COURT:  Anything else, Mr. Taylor, from you?
5              MR. TAYLOR:  No, Your Honor.  I think there is one
6  question, though, about when she will need to surrender.
7              THE COURT:  Well, usually what happens is, it's
8  typically sixty days.  But there can be a request for an
9  extension if there are underlying circumstances.  But I would
10 ask the Marshals Service about that.
11             MR. TAYLOR:  And if she were to want to surrender as
12 soon as tomorrow, I'm guessing nobody would object to that?
13             THE COURT:  No, I think that's an option, if she
14 wants to start.  But if she -- she's probably eligible for a --
15 again, we're talking about Bureau of Prisons classifications,
16 but she may be eligible for a camp.  If there's one out in
17 Ohio, then it may work to her advantage to surrender to the
18 camp instead of surrendering here and having to be transported.
19 But again, I would talk to the Marshals about that.
20             MR. TAYLOR:  Okay.
21             THE COURT:  Let me inquire of Probation, does she
22 need to report in today to go over her conditions?
23             OFFICER MARTINEZ:  No, Your Honor, not at this time.
24 If she would just report to the Marshals after the sentencing
25 hearing.

1  THE COURT: And then will Probation, I guess,
2 initiate the documentation to allow the appropriate federal
3 court in Ohio to supervise Ms. Williams?
4  OFFICER MARTINEZ: Yes, Your Honor. In reference to
5 that request, the Southern District of Ohio has accepted
6 supervision over the case. So once she has served her term,
7 then we will initiate a transfer of jurisdiction.
8  THE COURT: Okay. Well, that's good. I appreciate
9 you checking that out.
10  OFFICER MARTINEZ: Yes, Your Honor.
11  THE COURT: All right. Anything else on this case?
12  MS. LONG: Not from the United States. Thank you,
13 Your Honor.
14  MR. TAYLOR: No, Your Honor.
15  THE COURT: All right. Good luck to you,
16 Ms. Williams.
17  THE DEFENDANT: Thank you very much.
18 (Proceedings adjourned at 10:32 A.M. MST)
19              * * * * *
20
21
22
23
24
25

```
                IN THE UNITED STATES DISTRICT COURT

                    FOR THE DISTRICT OF NEW MEXICO

 _____
                          )
 UNITED STATES OF AMERICA,)
                          )
       Plaintiff,         )
                          )
    vs.                   )   No. 1:21-CR-01082-WJ
                          )
 JASMINE WILLIAMS,        )   SENTENCING HEARING
                          )
       Defendant.         )   ZOOM VIDEO-CONFERENCE
 _____ )
```

### CERTIFICATE OF OFFICIAL COURT REPORTER

I, Mary K. Loughran, CRR, RPR, New Mexico CCR #65, Federal Realtime Official Court Reporter, in and for the United States District Court for the District of New Mexico, do hereby certify that pursuant to Section 753, Title 28, United States Code, that the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter on Wednesday, November 10, 2021, and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States. Dated this 20th day of October, 2024.


_____
MARY K. LOUGHRAN, CRR, RPR, NM CCR #65
UNITED STATES COURT REPORTER
333 Lomas Boulevard, Northwest
Albuquerque, New Mexico  87102
Phone:  (505)348-2334
Email:  Mary_Loughran@nmd.uscourts.gov